LESLIE H. SOUTHWICK, Circuit Judge,
concurring:
I concur in the decision to affirm the sentence. Where I depart from Judge Reavley is that I do not conclude that the Illinois Supreme Court clearly resolved our issue in People v. Cherry, 407 Ill.Dec. 439, 63 N.E.3d 871 (2016). As a result, I find it necessary to look elsewhere to be sure this statute is divisible.
Cherry held that aggravated battery “involving the use of a deadly weapon other than a firearm” requires the State to “prove” a defendant used “a deadly weapon other than by the discharge .of a firearm[.]” Id., 407 Ill-Dec. 439, 63 N.E.3d.at 877 (quoting 720 III. Comp. Stat. §. 5/12-4(b)(1) (West 2010)). The court referred to the use of a deadly weapon other than by discharge of a firearm as an “element[]” that “serve[s] to aggravate [the] battery.” Id. 407 Ill.Dec. 439, 63 N.E.3d at 878. What concerns me is that there is Illinois caselaw that suggests the use of the term “element” in Cherry might not have been with the same meaning as the United States Supreme Court meant in Mathis. See Mathis v. United States, — U.S. —, 136 S.Ct. 2243, 2256-57, 195 L.Ed.2d 604 (2016).
Cherry said it would discuss two “forms” of aggravated battery under the 2010 aggravated-battery statute: (1) causing great bodily harm under Section '5/12-4(a), and (2) using a deadly weapon other than by discharge of a firearm under Section 5/12-4(b)(1). See Cherry, 407 Ill.Dec, 439, 63 N.E.3d at 877-78. It analyzed these, forms of aggravated battery in order to determine whether aggravated battery could.be the predicate offense for another crime Cherry committed, which was armed violence. Id. at 876-77, 63 N.E.3d at 877. There is no need to get into the nuances of that issue other than to pull a few points from the state court’s analysis. First, the aggravated-battery statute, 2010 edition, required that a battery be committed. That also is the case for the statute under which Reyes was convicted. Second, the crime was aggravated if the State could “prove the presence of an additional factor aggravating that battery.” Id. at 877, 63 N.E.3d at 877.
In the course of its analysis, the Cherry court said that “[t]he aggravated battery and aggravated battery with a firearm statutes share an identical structure. Both offenses require the State to prove the commission of a battery, and both offenses require the State to prove the presence of an additional’factor aggravating that battery.” Id. The court did not have before it the issue of whether jurors would need to be unanimous regarding any one form of aggravated battery.
My uncértainties partly arise from an earlier Illinois intermediate appellate court decision. See People v. Diaz, 244 Ill.App.3d 268, 185 Ill.Dec. 134, 614 N.E.2d 268 (1993). The Diaz court dealt with jury unanimity, which in substance is our issue. Jurors were given a verdict form which provided they could find Diaz guilty of aggravated battery if he “[1] intentionally and knowingly caused, great bodily harm ... or ... [2] knowingly and intentionally caused bodily harm ... and used a deadly weapon.” Id., 185 Ill.Dec. 134, 614 N.E,2d at 270. The offenses the Diaz court considered on the issue of juror unanimity are quite similar to the' offenses the Cherry *324 court considered on an unrelated issue of sentencing.
The defendant in Diaz argued that the general verdict form was fatally flawed because the jury did not need to be unanimous regarding the two theories of aggravated battery. Id. The court disagreed, holding the jury needed to be unanimous regarding the defendant’s guilt of the crime charged, not the “ ‘alternate ways in which the crime can be committed[.]’ ” Id. 185 Ill.Dec. 134, 614 N.E.2d at 271 (quoting People v. Travis, 170 Ill.App.3d 873, 121 Ill.Dec. 830, 525 N.E.2d 1137, 1147 (1988)). That would indicate at least some of the aggravating factors in the aggravated battery statute are means, not elements.
There are Illinois Supreme Court decisions that, like Diaz, fully embrace general verdicts for offenses that can be committed in disparate ways, a fact recognized in the court’s approved pattern jury instructions.[1] We read too much into Cherry to conclude it definitely meant “elements” in the Mathis-sense when that was not the court’s concern.
Diaz must be viewed for what it is: an earlier decision of an intermediate court dealing with an earlier aggravated-battery statute. Even so, because the opinions were discussing different legal issues, I do not believe the Diaz decision which indicates the two forms of ’battery it was discussing should be considered two different means, and Cherry which uses “elements” for quite similar offenses, are necessarily inconsistent. Hence, my uncertainty.
Still, Cherry does not discuss Diaz. It did not need to as its issue was different. Perhaps Cherry implies that, if put to the test, the Illinois Supreme Court would hold that the forms of aggravated battery under Section 6/12-3.05(0(1)—(4) contain separate Mathis elements. We have considered cases before that imply divisibility. See, e.g., United States v. Mendez-Henriquez, 847 F.3d 214, 219 (5th Cir. 2017). The implication is strengthened when we see that the Diaz court recognized there are “due process limitations on a ‘State’s capacity to define different courses of conduct, or states of mind, as merely alternative means of committing a single offense!;.]”’ Diaz, 185 Ill.Dec. 134, 614 N.E.2d at 272 (quoting Schad v. Arizona, 501 U.S. 624, 632, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991)). The variation among the forms of aggravated battery in the four subparts of Subsection (f) are quite different from each other, except for the two (Subparts (1) and (3)) that both deal with the use of a deadly weapon.
All that said, I see Judge Reavley’s interpretation of Cherry just to be one possible view. Our task certainly does not end, though, even if Cherry does not provide clear answers. See Mathis, 136 S.Ct. at 2256-57. We can also examine whether *325 “the statute on its face” resolves the issue, as Judge Reavley notes. Id. at 2256. The section of the Illinois statute at issue here does not seem to be providing “illustrative examples” but instead identifying widely different crimes, suggesting “elements.” See id. Further, looking at the entire stat-utej the final Subsection (h) specifies different classifications for some but not all of the specific aggravated-battery provisions, which leads to different sentences. See 720 III. Comp. Stat. § 5/12-3.05(h). The provision at issue in our case is not identified in Subsection (h) as having a specific sentence range, but this part of the statute provides some evidence regarding the entire statute. When “statutory alternatives carry different punishments, then under Apprendi they must be elements.” Mathis, 136 S.Ct. at 2256.
So far, the evidence points towards the subparts of Subsection (f) containing different elements. Still, if doubt remains, we examine “the record of- a prior conviction itself.” Id. In one case where “state law [did] not give us a clear answer” on this issue, we held the statute was divisible because the defendant “actually pleaded guilty” to a specific element, and the documents in the record made clear that the statute set forth elements. Ibanez-Beltran v. Lynch, 858 F.3d 294, 298 (5th Cir. 2017). In another case, we first took note of one state court decision that “implie[d] the statute list[ed] alternative elements,” but turned to the record of conviction because that case was not dispositive. See Mendez-Henriquez, 847 F.3d at 219. Because the defendant was charged with one element to the exclusion of all others, we held that “the statute enumerates alternative elements for committing a felony[.]” Id.
This record contains a copy of Reyes’s indictment. He was charged with a violation of Section 5/12-3.05(f)(l). The indictment said a dangerous weapon was used, specifically a machete. It contained no citation to or inclusion of language from any other subpart, ie., no reference to hoods or robes or recording the crime. This peek at the court record supports that the statute is divisible.
I find it necessary to go beyond Cherry. Doing so, I reach the same destination as does Judge Reavley, namely, that this subsection of the aggravated-battery statute is divisible.

. See People v. Smith, 233 Ill.2d 1, 329 Ill. Dec. 331, 906 N.E.2d 529, 538 (2009) (“[B]e-cause first degree murder is a single offense, it is constitutionally permissible for jurors to return a general verdict of guilty even if there is no juror unanimity with regard to the means by which the murder was committed.”); Illinois Pattern Instruction Criminal No. 26.01 at 5-6 (using aggravated battery as an example for an instruction that may be used where "a defendant is charged in multiple counts with an offense that .can be charged with different elements,” but noting that distinguishing among the ways in which the offense can be committed is not mandatory according to People v. Travis, 170 Ill.App.3d 873, 121 Ill.Dec. 830, 525 N.E.2d 1137 (1988)); cf. People v. Graves, 207 Ill.2d 478, 279 Ill.Dec. 502, 800 N.E.2d 790, 793 n;l (2003) (referring to aggravated battery as "[a]' textbook example of a single offense that can be committed in multiple ways,” yet distinguishing two subsections, referring to each as an "offense,” and observing they contain distinct "elements”).