PRISCILLA R. OWEN, Circuit Judge,
dissenting:
The question to be resolved is whether a conviction for aggravated battery under 720 III. Comp. Stat. § 5/12-3.05 is a “crime of violence” within the meaning of section 2L1.2(b)(l)(A)(ii) pf the United States Sentencing Guidelines that was in effect when Reyes was sentenced in 2016.[1] To answer this question, we must determine whether section 5/12-3.05 is “divisible” within the meaning^ of the Supreme Court’s decision in Mathis v. United States.[2] The Court explained in Mathis that if, under state law, a jury need not agree on the particular method by which the defendant committed an offense, then alternative methods set forth in the statute of conviction are “means” of committing the offense, not *326 “elements” of the offense.[3] A statute that sets forth “means” rather than “elements” is not divisible. A decision from an intermediate Illinois appellate court, People v. Diaz, held that when a jury is presented with two statutorily described alternative ways of committing aggravated battery, jurors, in convicting the defendant, need riot agree as to which of the alternatives occurred.[4] A more recent intermediate appellate court decision recognizes that Diaz stands for the proposition that the State may present a jury with alternative bases, as identified in the aggravated battery statute, on which to convict a defendant and that jury unanimity is not required.[5] Though Diaz did not deal with subsection (f) of Illinois’s aggravated battery statute, but instead concerned former sections 11.05, 11.07, and 11.09 of the Illinois criminal statutes that governed aggravated battery,[6] its holding is highly instructive and has not been overruled. Unless and until the Illinois courts say otherwise, the Diaz decision, coupled with the Illinois Supreme Court’s decision in People v. Smith,[7] pro-rides significant guidance regarding jury unanimity that we should accept.
I
A “crime of violence,” as defined in section 2Ll,2(b)(l)(A)(ii) of the Guidelines, in-eludes “any ... offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.” The Government contends that Reyes’s' conviction under section 5/12-3.05(f) necessarily “has as an element the use, attempted use, or threatened use of physical force against the person of another.”
A person commits the offense of “battery” under Illinois law “if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting pr provoking nature with an individual.”[8] The offense of “battery” does not have as an .element the .use, attempted use, or threatened use of physical force against the person of another.[9] Reyes was convicted of “aggravated battery” under section 5/12-3.05(f), which provides:
(f) Offense based on use of a weapon or, device. A person commits aggravated battery when, in committing a battery, he or she does any of the following:
(1) Uses a deadly weapon other than by discharge of a firearm, or uses an air rifle as defined in Section 24.8-0.1 of this Code.
*327 (2) Wears a hood, robe, or mask to conceal his or her identity.
(3) Knowingly and without lawful justification shines or flashes a laser gunsight or other laser device attached to a firearm, or used in concert with a firearm, so that the laser beam strikes upon or against the person of another.
(4) Knowingly video or audio records the offense with the intent to disseminate the recording.-
If section 5/12-3.05(f) is divisible, then a conviction under subsection (1) would involve the use or threatened use of physical force against the person of another, but a conviction under subsection (2) or (4) would not. However, as explained above, the Illinois intermediate courts have not required a jury to agree on the method by which an aggravated battery was committed in order to convict a defendant. For example, a defendant could be charged under this section for committing a battery while “us[ing] a deadly weapon other than by discharge of a firearm” or while “wearing] a hood.” Jurors could disagree on whether a deadly weapon was used and still return a guilty verdict.
II
Judge Reavley’s opinion properly sets forth the “threshold inquiry” of “elements or means” from the Supreme Court’s decision in Mathis v. United States[10] and correctly observes that “[sjtate courts are the ideal expositors of state law.”[11] Resolving the threshold inquiry in Mathis was “easy” for the Supreme Court, because a “state court decision definitively answer[ed] the question” and “[w]hen a ruling of that kind exists, a sentencing judge need only follow what it says.”[12] In Mathis, a state court decision definitively held that “[t]he listed premises in Iowa’s burglary law ... are ‘alternative method[s]’ of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle.”[13] “Armed with such authoritative sources of state law, federal sentencing courts can readily determine the nature of an alternatively phrased list.”[14]
The guidance that we have from the Illinois courts indicates that a jury would not have to agreé as to which subsection of section 5/12-3.05(f) applied in finding a defendant guilty under subsection (f). In People v. Diaz, the defendant was convicted of aggravated battery, though the jury instructions did not require the jury to agree bn how the defendant actually committed the crime.[15] Instead, the instructions “permitted the jury to return a general guilty verdict of aggravated battery” by finding that the defendant either “intentionally and knowingly caused great bodily harm” or “knowingly and intentionally caused bodily harm ... and used a deadly weapon.”[16] On appeal, the defendant argued that allowing the jury to “disagree[ ] as to which alternative course of conduct [he] committed” violated his constitutional rights.[17] An Illinois appellate court affirmed the conviction, quoting People v. *328 Travis[18] for the proposition that “the jury-need only be unanimous with respect to the ultimate question of defendant’s guilt or innocence of the crime charged, and unanimity is not required concerning alternate ways in which the crime can be committed, and, accordingly, we so hold.”[19] The threshold inquiry should end here, as it did in Mathis.
Judge Southwick’s opinion discounts Diaz as an older, intermediate appellate court decision.[20] However, Illinois’s current pattern jury instructions reflect that Diaz continues to have purchase in the submission of aggravated battery to jurors, A “General Concluding Instruction” in the pattern jury instructions specifically allows a jury to convict a defendant of aggravated battery without agreeing on the alternative methods of the crime.[21] The Committee Notes to the instructions state that “[w]hen a defendant is charged in multiple counts with an offense that can be charged with different elements,” the court may use a jury instruction that requires the jury to agree on which “particular way” the defendant committed the crime, but it is not required to do so.[22] The instructions use aggravated battery as an example:
An example would be a defendant charged in three separate counts with aggravated battery based upon his alleged (1) causing great bodily harm, (2) causing bodily harm to a police officer, and (3) committing a battery upon a public way. Each of these charges is called aggravated battery, but each contains an element that must be proved beyond a reasonable doubt that neither of the other charges contains. Accordingly, a court may choose to distinguish on the verdict forms between the ways in which aggravated battery can be committed. If the court so chooses, then the opening sentence of the issues instructions as well as the guilty and not guilty verdict forms should be expanded to distinguish among the different ways a particular charge is before the jury.
[[Image here]]
The Committee wishes to emphasize that distinguishing among the various ways in which a given charge is brought is not required by law. In People v. Travis, 170 Ill. App. 3d 873, 525 N.E.2d 1137, 121 Ill.Dec. 830 (4th Dist. 1988), the court rejected the argument that such distinctions were mandatory and stated the following: “the best rule is that the jury need only be unanimous with respect to the ultimate question of defendant’s guilt or innocence of the crime charged, and unanimity is not required concerning alternate ways in which the crime can be committed.... ”[23]
Judge Southwick’s opinion suggests that “if put to the test, the Illinois Supreme Court would hold that the forms of aggravated battery under Section 5/12-3.05(f)(1)—(4) contain separate Mathis elem *329 ents.”[24] With great respect, this Erie guess[25] seems to miss the mark for several reasons. First, at the time Reyes was convicted, through the present, Illinois courts have construed the varying methods of committing “aggravated battery” to comprise a single offense. The Illinois Supreme Court has construed varying means of committing murder to comprise a single event.[26] Discounting and disregarding these state court opinions ignores “‘Tay-lors demand for certainty4 when determining whether a defendant was- convicted of a generic offense.”[27] A federal sentencing court must ask what the state court required a jury to find, under state law, to convict a defendant of the state offense at the time of conviction.[28] Neither Judge Reavley’s opinion nor Judge Southwick’s opinion offers any basis for concluding with assurance that, at the time that Reyes toas convicted, Illinois law treated the various methods of committing aggravated burglary set forth in section 5/12-3.05 as elements of separate offenses, not means of committing an offense. As will be discussed below, virtually all of the Illinois decisions indicate that the Illinois courts have treated aggravated battery, and certain other crimes with statutorily-described means of committing the offense, as a single offense.
Judge Reavley’s opinion characterizes the holding in Diaz as “Illinois law on the permissibility of general verdicts where a defendant is charged with multiple and distinct offenses, and is unrelated to the present case where conviction matches the crime charged and satisfies federal sentencing requirements.”[29] Though the defendant in Diaz was charged with multiple offenses, only aggravated battery was at issue on review, as he was acquitted of all other charges.[30] The Diaz decision focused on the validity of a general verdict finding the defendant guilty of one offense—aggravated battery—“even though the jury may have disagreed over which of the instruction’s two alternative courses of conduct defendant committed.”[31] Diaz is related to the present case because it demonstrates that Illinois law does not require jury unanimity how an aggravated battery was committed.
Judge Reavley’s opinion relies on the Illinois Supreme Court’s decision in People v. Cherry,[32] contending that its “ultimate holding” was that “aggravated battery with a firearm is a separate offense from aggravated battery.”[33] The actual issue in Cherry was “whether aggravated battery with a firearm is an enhanced or aggravated version of aggravated battery, such that aggravated battery cannot serve as the *330 predicate for armed violence.”[34] The court héld that “like' aggravated battery itself, aggravated battery with a firearm is an enhanced or aggravated form of battery. Consequently, there is absolutely no reason why, as charged in this case, aggravated battery cannot serve as the predicate for a charge of armed violence.”[35] The Illinois court suggested in Cherry, in dicta, that aggravated battery involving the use of a deadly weapon might be a sepárate “offense,”[36] but the court was not addressing the question we must resolve. It was not using the term “offense” in the context of Mathis’s distinction between a “means” of committing an offense and the “elements” of an offense. The Illinois court compared aggravated battery by great bodily harm and aggravated battery by use of a deadly weapon (contained in different subsections in the same former section), denominating “both of these provisions” “two forms of aggravated, battery.”[37] The court continued, by stating that “to prove the latter offense, the State must prove that the defendant ... [used] a deadly weapon.”[38]
The Illinois court did hot hold in Cherry that in convicting a defendant of aggravated battery, jury unanimity vyas required as to whether aggravated battery had been committed by great bodily harm or instead had been committed by use of a deadly weapon. Rather, the court observed that they share the underlying offense of simple battery.[39]
None. of the other decisions cited in J\jdge Reavley’s opinion address the issue of juror unanimity, on which our analysis of section 5/12-3.05(f) turns.[40] They address only- the proof required when a specific means is charged,[41] not whether a jury is required to agree if the defendant committed aggravated battery while wearing a hood or while using a deadly weapon other than by discharging a firearm.
Judge Southwick’s opinion correctly observes that certain subsections of Illinois’s aggravated' battery statute carry different punishments[42] and that, as a general proposition, when “statutory alternatives carry different punishments, then under Appren-di they must be elements.”[43] However, the punishment for an offense described in subsection (f) does not vary based on which of 'the four subsections is applicable.[44] It is also important to understand that while federal sentencing courts may recognize that there may be an issue under Apprendi if, for example, -the Illinois courts did not require jury unanimity as to which subsection of section 5/12-3.05(a) a defendant violated, since the punishment differs among those subsections, that does not speak to actual practice in the state courts. If a state court in actual practice did not require juror unanimity, then a conviction under a statute with alternatives that fall outside the definition of a *331 crime of violence should not be used to enhance a sentencing range, since the courts did not treat the statute as divisible ■within the meaning of Mathis.
It bears repeating that the punishment for any conduct described in subsection 5/12-3.05(f) is the same. In any event, the fact that Illinois varies its punishments for conduct described within other subsections of section 5/12-3.05, such as subsection (a), does not mean that the varying conduct described within every subsection of section 5/12-3.05 defines a separate “offense” such that the statute is divisible under Mathis. To the contrary, the Illinois counts have held that a single offense may have different punishments and that a jury may convict a defendant of that offense without specifying which means the defendant used to commit the crime.[45] Instead of requiring jury unanimity as to which of the various means that were charged was actually employed, the Illinois courts have held that, at least when a trial court denies a defendant’s request for a specific verdict form for each means charged and instead submits a general verdict form, the sentence for the offense is limited to the most favorable ■ sentence from'the defendant’s perspective.[46]
In People v. Smith, the Illinois Supreme Court described first degree murder as a single offense, even though the statute had “three ‘types’ of murder,”—intentional, knowing, and felony murder—and. prescribed “different sentencing consequences based on the specific theory of murder proven.”[47] The court concluded that the different types are “merely different ways to commit the same crime” even though the sentencing consequences varied.[48] The court explained that “because first degree murder, is a single offense, it is constitutionally permissible for jurors to return a general verdict of guilty even if there is no juror unanimity with regard to the means by which the murder was committed,”[49] citing Schad v. Arizona.[50]. The court upheld the murder conviction in Smith even though the jury returned a general verdict of guilty without specifying which type of murder the defendant committed.[51] The Illinois Supreme Court held that “where a defendant is charged with murder in multiple counts alleging intentional, knowing, *332 and felony murder, and a general verdict of guilty is returned, the defendant is presumed to be convicted of the most serious offense.”[52] However, because the defendant had requested' specific verdict forms, and the trial court denied that request in submitting a génerál verdict form, the Illinois court held that the lesser sentence must be applied.[53]
Judge Reavley’s opinion additionally asserts that this case ‘ can b¿ resolved by using the documents from Reyes’s prior conviction “as an aid in determining [the] statute’s divisibility.”[54] I sympathize with this view, but it was expressly rejected in Mathis. The defendant in Mathis had previously been convicted under an Iowa burglary statute that' “coyers more conduct than generic burglary does.”[55] The Supreme Court reversed the sentence imposed under the Armed Career Criminal Act (ACCA) because it concluded that the Iowa statute was not divisible.[56] Justice Bbeyer’s dissenting opinion argued that the sentence' could be upheld based on what was charged in that prior Iowa case and what the prosecution had to prove to get a conviction in that case. Justice Breyer’s opinion explained that “[t]he relevant state statute, an Iowa statute, says that a person commits a-crime if he (1) ‘enters an occupied structure,’ (2) ‘having no right ... to do so,’ (3) with ‘the intent to commit a felony.’”[57] The statute “define[d] ‘occupied structure’ as including any (1) ‘building,’ (2) ‘structure,’ (3) ‘land’ vehicle, (4) ‘water’ vehicle, or (5) ‘air vehicle, or similar place.’”[58] But, “if the structure that the offender unlawfully entered was a land, water, or air vehicle, the state- crime does not count as a ‘burglary.’ ”[59] Justice Breyer’s dissenting opinion then examined the charging documents and advocated that Mathis had been convicted of generic burglary because what the prosecutor actually charged, and therefore was required to prove, constituted generic burglary:
Here, if we look at the court documents charging Mathis with a violation of the state statute, they tell us that he was charged with entering, for example, a “house and garage.” They say nothing about any other structure, say, a “water vehicle.” Thus, to convict him, the jury— which had to find that he unlawfully entered an “occupied structure”—must have found that he entered a “house and garage,” which concededly .count as “buijding [s].” So why is that not the end *333 of this matter? Why does the federal statute not apply?[60]
This understanding of the modified categorical approach was expressly rejected by the Court in Mathis, and Judge Reavley’s opinion reflects precisely the same logically appealing, but incorrect, understanding of the modified categorical approach. The Court’s opinion in Mathis draws a fine distinction as to when and for what purpose the record of a prior conviction may be consulted in determining if a statute is divisible.[61] But the pourt’s opinion in Mathis unequivocally disapproved of an approach like that advanced in Judge Reavley’s opinion because otherwise, in Mathis, the Court would not have reversed the court of appeals’ judgment.
Judge Reavley’s opinion points to Illinois’s Murderer and Violent Offender Against Youth Registration Act,[62] under which section 5/12-3.05(f)(l) can constitute a “violent offense against youth” but the other subsections of section 5/12-3.05© cannot.[63] That section 5/12-3.05(f)(l) is singled out in this Act is not dispositive in our case. The Act lists two other types of aggravated battery that can constitute a violent offense against youth: aggravated battery by “great bodily harm or permanent disability or disfigurement,” section 5/12-3.05(a)(l), and by committing battery on a “person who is pregnant or has a physical disability,” section 5/12-3.05(d)(2).[64] However, as noted above, the Illinois pattern jury instructions use aggravated battery by “great bodily harm” as an example of one of the “various ways” of committing aggravated battery that does not require jury unanimity.[65] That is, even though aggravated battery by great bodily harm is singled out by Illinois’s Murderer and Violent Offender Against Youth Registration Act, Illinois’s pattern jury instructions do not require jury unanimity on whether a defendant actually did cause great bodily harm. A type of aggravated battery is not necessarily a “discrete offense” because Illinois’s Murderer and Violent Offender Against Youth Registration Act singles it out as a type of aggravated battery that can constitute a “violent offense against youth.”[66]
ift M
For these reasons, I respectfully dissent.

. See U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2L1.2 cmt. n.l(B)(iii) (U.S. Sentencing Comm’n 2015):
"Crime of violence” means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses ..., statutory rape, sexual abuse of a minor, robbery, arson,' extortion, extortionate extension of credit, burglary of a dwell-mg, or any other offense under federal, state, ‘or local law that has- as an element the use, attempted use, or threatened use of physical force against the person of another,

. — U.S. —, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016).

. Id. at 2256 ("This threshold inquiry—elements or means?—is easy in this case, as it will be in many others. H.ere, a state court decision definitively answers the question: The listed premises in Iowa’s burglary law, the State Supreme Court held, are 'alternative method[s]’ of committing one offense, so that a jury heed not agree whether the burgled location was a building, other structure, or vehicle. When a ruling of that kind exists, a sentencing judge need only follow what it says.” (alteration in original) (citation omitted) (quoting State v. Duncan, 312 N.W.2d 519, 523 (Iowa 1981))).

. 244 Ill.App.3d 268, 185. Ill.Dec. 134, 614 N.E.2d 268, 270-71 (1993).

. See People v. Smith, 372 Ill.App.3d 762, 310 Ill.Dec. 590, 866 N.E.2d 1192, 1198 (2007), aff'd in part and rev'd in part, 233 Ill.2d 1, 329 Ill.Dec. 331, 906 N.E.2d 529 (2009) (explaining that in Diaz, the jury could have convicted the defendant without agreeing upon which "alternative course of conduct that the defendant committed”).

. See Diaz, 185 Ill.Dec. 134, 614 N.E.2d at 271.

. 329 Ill.Dec. 331, 906 N.E.2d at 540-42.

. 720 III. Comp. Stat. § 5/12-3.

. See United States v. Velasco, 465 F.3d 633, 637 (5th Cir. 2006).

. — U.S. -, 136 S.Ct. 2243, 2256, 195 L.Ed.2d 604 (2016).

. Ante at 318-19.

. Mathis, 136 S.Ct. at 2256.

. Id. (alteration in original) (quoting State v. Duncan, 312 N.W.2d 519, 523 (Iowa 1981)).

. Id.

. 244 Ill.App.3d 268, 185 Ill.Dec. 134, 614 N.E.2d 268, 270 (1993).

. Id.

. Id.

. 170 Ill.App.3d 873, 121 Ill.Dec. 830, 525 N.E.2d 1137 (1988).

. Diaz, 185 Ill.Dec. 134, 614 N.E.2d at 271 (quoting Travis, 121 Ill.Dec. 830, 525 N.E.2d at 1147); see also People v. Jackson, 372 Ill.App.3d 605, 314 Ill.Dec. 213, 874 N.E.2d 123, 129 (2007) (“Defendant was not entitled to a unanimous verdict on whether he fired the weapon or whether [his friend] fired the weapon,” (citing Travis, 121 Ill.Dec. 830, 525 N.E.2d at 1147)).

. Ante at 324.

. Illinois Pattern Jury Instructions-Criminal § 26.01 & accompanying notes.

. Id.

. Id.

. Ante at 324.

. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

. See People v. Smith, 233 Ill.2d 1, 329 Ill.Dec. 331, 906 N.E.2d 529, 540-42 (2009).

. Mathis v. United States, — U.S. —, 136 S.Ct. 2243, 2257, 195 L.Ed.2d 604 (2016) (quoting Shepard v. United States, 544 U.S. 13, 21, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)).

. See id. at 2255 (''[A]n ACCA penalty may be based only on what a jury 'necessarily found’ to convict a defendant (or what he necessarily admitted).” (quoting Descamps v. United States, — U.S. —, 133 S.Ct. 2276, 2287, 186 L.Ed.2d 438 (2013))).

. Ante at 321-22.

. People v. Diaz, 244 Ill.App.3d 268, 185 Ill.Dec. 134, 614 N.E.2d 268, 269 (1993).

. Id.

. 407 Ill.Dec. 439, 63 N.E.3d 871 (2016).

. Ante at 320-21.

. Cherry, 407 Ill.Dec. 439, 63 N,E.3d at 879.

. Id.

. id. 407 Ill.Dec. 439, 63 N,E.3d at 877-78.

. Id.

. Id. 407 Ill.Dec. 439, 63 N.E.3d at 877 (second alteration in original).

. Id. 407 Ill.Dec. 439, 63 N.E.3d at 877-78.

. See ante at 321 n.4.

. See ante at 321 n.4.

. Ante at 324-25; see 720 Ill. Comp. Stat. § 5/12-3.05(h).

. Mathis v. United States, — U.S. —, 136 S.Ct. 2243, 2256, 195 L.Ed.2d 604 (2016) (citing Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).

. § 5/12-3.05(h).

. See People v. Smith, 233 Ill.2d 1, 329 Ill.Dec. 331, 906 N.E.2d 529, 540-42 (2009).

. Id.

. Id. 329 Ill.Dec. 331, 906 N.E.2d at 537, 538 ("While our statute describes three 'types’ of murder, first degree murder is a single offense. As we have explained on numerous occasions, 'the different theories embodied in the first degree murder statute ... are merely different ways to commit the same crime.’ ” (quoting People v. Cooper, 194 Ill.2d 419, 252 Ill.Dec. 458, 743 N.E.2d 32, 39 (2000))).

. Id. 329 Ill.Dec. 331, 906 N.E.2d at 537 (quoting Cooper, 252 Ill.Dec. 458, 743 N.E.2d at 39); see also id., 329 Ill.Dec. 331, 906 N.E.2d at 538 ("While it is certainly true that first degree murder is but a single offense and, thus, a general verdict need not rest on a unanimous finding of a particular theory of murder, it is also true' that there may be different sentencing consequences based on the specific theory of murder proven. For example, there are several aggravating factors, applicable only to murders committed intentionally or knowingly, which, if proven to exist, will support a sentence of death.”); id. ("However, a person convicted of felony murder is eligible for the death penalty only if the sentencing jury finds beyond a reasonable doubt ... that the defendant actually lulled the victim or substantially contributed to his physical injuries and, in so doing, intended to kill or knew that his acts caused a strong probability of death or great bodily harm.”).

. Id. 329 Ill.Dec. 331, 906 N.E.2d at 538.

. 501 U.S. 624, 631-32, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).

. Smith, 329 Ill.Dec. 331, 906 N.E.2d at 545.

. Id. 329 Ill.Dec. 331, 906 N.E.2d at 540.

. Id. 329 Ill.Dec. 331, 906 N.E.2d at 541-43, 544-45 (noting that "where a defendant is charged with murder in multiple counts alleging intentional, knowing, and felony murder, and a general verdict of guilty is returned, the defendant is presumed to be convicted of the most serious offense—intentional murder—so that judgment and sentence should be entered on the conviction for intentional murder and the convictions on the less serious murder charges should be vacated,” but concluding "that where, as here, specific findings by the jury with regard to the offenses charged could result in different sentencing consequences, favorable to the defendant, specific verdict forms must be provided upon request and the failure to provide them is an abuse of discre- , tion. Accordingly, we affirm the appellate court’s finding that, in the cases at bar, the trial courts erred when they refused defendants’ requests for separate verdict forms.”).

. Ante at 322,

. Mathis v. United States, — U.S. —, 136 S.Ct. 2243, 2250, 195 L.Ed.2d 604 (2016).

. Id. at 2253-54, 2257.

. Id, at 2259 (Breyer, X, dissenting) (second alteration in original) (quoting Iowa Code § 713.1).

. Id. (quoting Iowa Code § 702.12).

. .Id. at 2260.

. Id. (alteration in original) (citation omitted).

. See id. at 2256-57 (majority opinion).

. Ante at 321-22; 730 III. Comp. Stat. § 154/1.

. 730 III. Comp. Stat. § 154/5(b)(4.4).

. Id.

. Illinois Pattern Jury Instructions-Criminal § 26.01 & accompanying notes.

.Ante at 321-22.